**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

| | |
|---|---|
| RANDY LUNA, Individually and For Others Similarly Situated<br><br>v.<br><br>TUG HILL OPERATING, LLC | Case No. 5:23-cv-361 Bailey<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

ELECTRONICALLY FILED
12/19/2023
U.S. DISTRICT COURT
Northern District of WV

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Randy Luna ("Luna") brings this collective action lawsuit to recover unpaid overtime wages and other damages from Tug Hill Operating, LLC ("Tug Hill") under the Fair Labor Standards Act ("FLSA").

2. Tug Hill employed Luna as one of its Day Rate Workers (defined below).

3. Tug Hill paid Luna and the other Day Rate Workers by the day.

4. Luna and the other Day Rate Workers regularly worked more than 40 hours a week.

5. But Tug Hill did not pay Luna and its other Day Rate Workers overtime.

6. Instead, Tug Hill misclassified Luna and its other Day Rate Workers as independent contractors and paid them a flat amount for each day worked, regardless of the total number of hours they worked in a workweek (a "day rate").

7. Tug Hill paid Luna and its other Day Rate Workers under its uniform day rate pay scheme regardless of any individualized factors.

8. Tug Hill's uniform day rate pay scheme violates the FLSA by depriving Luna and the other Day Rate Workers of overtime wages for all hours worked after 40 in a workweek.

1

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court has specific personal jurisdiction over Tug Hill based on Tug Hill's substantial contacts with, and conduct directed towards, West Virgina that forms the basis of this action.

11. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

12. Specifically, Tug Hill employed Luna primarily in Marshall County, West Virginia, which is in this District and Division.

## PARTIES

13. Luna worked for Tug Hill as a Safety Coordinator in West Virginia from approximately October 2021 until August 2023.

14. Throughout his employment, Tug Hill misclassified Luna as an independent contractor to avoid paying him overtime wages.

15. Instead, Tug Hill paid Luna a day rate with no overtime.

16. Luna's written consent is attached as **Exhibit 1**.

17. Luna brings this collective action on behalf of himself and all other similarly situated Safety Coordinators who worked for, or on behalf of, Tug Hill who were paid under its illegal day rate pay scheme.

18. Tug Hill paid each of these Safety Coordinators a flat amount for each day they worked and failed to pay them overtime when they worked more than 40 hours in a workweek in willful violation of the FLSA.

19. The putative collective of similarly situated employees is defined as:

> **All Safety Coordinators[1] who worked for, or on behalf of, Tug Hill who were paid day rate with no overtime at any time during the past 3 years ("Day Rate Workers").**

20. Tug Hill is a Texas limited liability company headquartered in Ft. Worth, Texas.

21. Tug Hill can be served through its registered agent: **CTC, 1627 Quarrier Street, Charleston, West Virginia 25311**.

## FLSA COVERAGE

22. At all relevant times, Tug Hill was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Tug Hill was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, Tug Hill was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

25. At all relevant times, Tug Hill has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, the Day Rate Workers were Tug Hill's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

---

[1] In the oil and gas industry, Safety Coordinators are also referred to as "EHS Coordinators," "Safety Consultants," "Safety Coaches," and "EHS Coaches."

3

27. At all relevant times, Luna and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

28. Tug Hill treated Luna and its other Day Rate Workers as employees and uniformly dictated the pay and other employment practices it applied to them.

29. Tug Hill's misclassification of Luna and the other Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

30. Tug Hill uniformly paid Luna and its other Day Rate Workers under its day rate pay scheme.

31. Tug Hill applied its illegal day rate pay scheme to Luna and the other Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

32. As a result of Tug Hill's uniform day rate pay scheme, Luna and the other Day Rate Workers did not receive premium overtime wages when they worked more than 40 hours in a workweek.

33. Tug Hill's uniform day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

34. Tug Hill " is a privately held, independent oil & gas exploration company focused on drilling and producing oil and clean-burning natural gas in the continental United States."[2]

35. To meet its business objectives, Tug Hill hires Safety Coordinators, like Luna and the other Day Rate Workers, to work on its oil and gas rigs.

36. Tug Hill misclassifies these workers (including Luna and the Day Rate Workers) as independent contractors to avoid paying them overtime wages.

---

[2] https://tughilloperating.com/ (last visited December 13, 2023).

37. But Tug Hill does not hire Luna and the other Day Rate Workers on a project-by-project basis.

38. Rather, Tug Hill hires and treats Luna and the other Day Rate Workers just like regular employees.

39. Despite misclassifying Luna and the other Day Rate Workers as independent contractors, Tug Hill controls all meaningful aspects of their employment.

40. Tug Hill controls Luna's and the other Day Rate Workers' rate and method of pay.

41. Tug Hill controls Luna's and the other Day Rate Workers' schedules and assignments.

42. Tug Hill controls Luna's and the other Day Rate Workers' work.

43. Tug Hill requires Luna and the other Day Rate Workers to follow Tug Hill's policies, protocols, and Standard Operating Procedures.

44. Luna's and the other Day Rate Workers' work must strictly adhere to the quality standards put in place by Tug Hill.

45. In fact, while on a site, Luna and the other Day Rate Workers take direction from, and are supervised by, Tug Hill personnel.

46. Luna and the other Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

47. Indeed, the daily and weekly activities of Luna and the other Day Rate Workers are routine and largely governed by standardized plans, procedures, and checklists created by Tug Hill.

48. Virtually every job function is predetermined by Tug Hill, including the tools and equipment used at the job site, the schedule of work, and related work duties.

49. Without the job Luna and the other Day Rate Workers performed, Tug Hill would not be able to complete its business objective of oil and gas production.

50. The work Luna and the other Day Rate Workers performs is an essential and integral part of Tug Hill's core oil and gas business.

51. Luna and the other Day Rate Workers rely on Tug Hill for work and compensation.

52. Luna and the other Day Rate Workers cannot subcontract out the work they are assigned by Tug Hill.

53. Luna and the other Day Rate Workers do not substantially invest in the tools and equipment required to complete the overall job to which they are assigned.

54. Rather, Tug Hill incurs the large-scale business and operating expenses like marketing, job sites, equipment, tools, and materials.

55. Luna and the other Day Rate Workers do not market their services while employed by Tug Hill.

56. Tug Hill sets Luna's and the other Day Rate Workers' work schedule, which prohibits them from working other jobs while working for Tug Hill.

57. At all relevant times, Tug Hill maintained control, oversight, and direction of Luna and the other Day Rate Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

58. In sum, as a matter of economic reality, Luna and the other Day Rate Workers are Tug Hill's employees.

59. Tug Hill uniformly pays its Safety Coordinators (including Luna and the other Day Rate Workers) under its illegal day rate pay scheme.

60. Tug Hill routinely schedules Luna and its other Day Rate Workers to work more than 40 hours a week.

61. Instead of paying Luna and the other Day Rate Workers overtime wages, Tug Hill only pays them their set day rates for their actual days worked.

62. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice—Tug Hill's illegal day rate pay scheme—for similar work.

63. For example, Luna worked for Tug Hill as a Safety Coordinator in West Virgina from approximately October 2021 until August 2023.

64. As a Safety Coordinator, Luna's primary responsibilities included overseeing the work of third-party contractors to ensure projects were completed in accordance with Tug Hill's safety policies, procedures, and protocols, as well as well-established industry standards and safety regulations (e.g., OSHA), and providing safety reports to Tug Hill on the same.

65. Throughout his employment, Luna typically worked 12 to 24 hours a day for 7 days a week (or 84 to 168 hours a week).

66. Luna worked in accordance with the schedule set by Tug Hill.

67. Despite knowing Luna regularly worked overtime, Tug Hill did not pay him overtime wages.

68. Instead, Tug Hill paid Luna under its illegal day rate pay scheme.

69. Specifically, Tug Hill paid Luna approximately $1,000 to $2,000 each day he actually worked, regardless of the number of hours he worked that day (or that week) and failed to pay him overtime when he worked over 40 hours in a week.

70. Tug Hill pays its other Day Rate Workers according to the same illegal day rate pay scheme it imposed on Luna.

71. That is, Tug Hill pays its other Day Rate Workers on a day rate basis and fails to pay them overtime when they work more than 40 hours in a week.

72. Like Luna, the other Day Rate Workers typically work 12 to 24 hours a day for 7 days a week (or 84 to 168 hours a week).

73. And like Luna, the other Day Rate Workers work in accordance with the schedule set by Tug Hill.

74. Despite knowing its Day Rate Workers regularly work overtime, Tug Hill does not pay them overtime wages.

75. Instead, Tug Hill pays its Day Rate Workers a flat amount for each day worked, regardless of the number of hours they worked that day (or that week) and fails to pay them overtime when they work more than 40 hours in a week in willful violation of the FLSA.

76. Tug Hill never paid Luna and the other Day Rate Workers on a "salary basis."

77. Tug Hill does not pay Luna and the other Day Rate Workers a guaranteed salary that is not subject to reduction based on the quality or quantity worked.

78. Rather, Tug Hill only pays Luna and the other Day Rate Workers their set day rates for the actual days they work.

79. If Luna and the other Day Rate Workers do not work, they do not get paid.

80. Luna's and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

81. Thus, Tug Hill never paid Luna and the other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

82. Because Tug Hill fails to pay Luna and the other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime wages.

83. But Tug Hill does not pay Luna and the other Day Rate Workers overtime wages when they work more than 40 hours in a workweek in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

84. Luna incorporates all other paragraphs by reference.

85. Like Luna, the other Day Rate Workers are uniformly victimized by Tug Hill's illegal day rate pay scheme.

86. Other Day Rate Workers worked with Luna and indicated they were paid in the same manner, performed similar work, and were subject to Tug Hill's same illegal day rate pay scheme.

87. Based on his experience with Tug Hill, Luna is aware Tug Hill's illegal day rate pay scheme was imposed on the Day Rate Workers.

88. The Day Rate Workers are similarly situated in the most relevant respects.

89. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

90. Any relevant exemption defenses would require Tug Hill to pay the Day Rate Workers on a "salary basis."

91. Because Tug Hill fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties performed by those employees are largely irrelevant.

92. The only *relevant* inquiry is whether the Day Rate Workers were paid a day rate with no overtime wages when they worked more than 40 hours in a week (which, by definition, they were).

93. Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent collective treatment.

94. Rather, Tug Hill's uniform day rate pay scheme renders Luna and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

95. Tug Hill's records reflect the number of days and/or hours the Day Rate Workers worked each week.

96. Tug Hill's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a week.

97. The backwages owed to Luna and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

98. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Tug Hill's records, and there is no detraction from the common nucleus of liability facts.

99. Therefore, the issue of damages does not preclude collective treatment.

100. Luna's experiences are therefore typical of the experiences of the other Day Rate Workers.

101. Luna has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent collective treatment.

102. Like each Day Rate Worker, Luna has an interest in obtaining the unpaid wages owed under federal law.

103. A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

104. Absent this collective action, many Day Rate Workers will not obtain redress for their injuries, and Tug Hill will reap the unjust benefits of violating the FLSA.

105. Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

106. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

107. Luna knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

108. As part of its regular business practices, Tug Hill intentionally, willfully, and repeatedly violated the FLSA with respect to the Day Rate Workers.

109. Tug Hill's illegal day rate pay scheme deprived Luna and the other Day Rate Workers of the overtime wages they are owed under federal law.

110. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

111. The Day Rate Workers are known to Tug Hill, are readily identifiable, and can be located through Tug Hill's business and personnel records.

## TUG HILL'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

112. Luna incorporates all other paragraphs by reference.

113. Tug Hill knew it controlled Luna's and the other Day Rate Workers' rates of pay.

114. Tug Hill knew it controlled Luna's and the other Day Rate Workers' method of pay.

115. Tug Hill knew it controlled Luna's and the other Day Rate Workers' schedules.

116. Tug Hill knew it prohibited Luna and the other Day Rate Workers from straying from Tug Hill's procedures and other protocols in performing their job duties.

117. Tug Hill knew it did not require Luna and the other Day Rate Workers to possess any specialized skillset other than that maintained by all workers in their respective job positions.

118. Tug Hill knew Luna's and the other Day Rate Workers' work was integral to Tug Hill's oil and gas business operations.

119. Tug Hill knew its investment in the tools and equipment necessary for Luna and the other Day Rate Workers to perform their jobs relatively outweighed any investment made by these employees.

120. Tug Hill knew it did not hire Luna and the other Day Rate Workers to work on a project-by-project basis.

121. Tug Hill knew Luna and the other Day Rate Workers relied on it for work and compensation.

122. Tug Hill knew it controlled Luna's and the other Day Rate Workers' opportunity for profit or loss.

123. Thus, Tug Hill knew, should have known, or recklessly disregarded whether, as a matter of economic reality, Luna and the other Day Rate Workers were Tug Hill's employees.

124. Nonetheless, Tug Hill misclassified Luna and the other Day Rate Workers as independent contractors and refused to pay them overtime.

125. Tug Hill's decision to misclassify Luna and the other Day Rate Workers as independent contractors was neither reasonable, nor was it made in good faith.

126. Tug Hill knew it was subject to the FLSA's overtime provisions.

127. Tug Hill knew the FLSA required it to pay non-exempt employees, including Luna and the other Day Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

128. Tug Hill knew Luna and each Day Rate Worker worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

129. Tug Hill knew Luna and the other Day Rate Workers were paid on a daily basis.

130. Tug Hill knew Luna and the other the Day Rate Workers were paid a day rate (with no overtime for hours worked over 40 in a week).

131. Tug Hill knew Luna and the other Day Rate Workers were not paid on a "salary basis."

132. Tug Hill knew Luna and the other Day Rate Workers were not paid any guaranteed salary that was not subject to reduction based on the number of days worked.

133. Tug Hill knew that any base "salary" Luna and the other Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

134. Thus, Tug Hill knew its day rate pay scheme did not satisfy the "salary basis" test.

135. Tug Hill knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to Luna and the other Day Rate Workers.

136. Nonetheless, Tug Hill uniformly misclassified Luna and the other Day Rate Workers as exempt and refused to pay them overtime.

137. Tug Hill's decision to misclassify Luna and the other Day Rate Workers as exempt employees was neither reasonable, nor was it made in good faith.

138. Likewise, Tug Hill's failure to pay Luna and the other Day Rate Workers overtime was neither reasonable, nor was its decision not to pay these employees overtime made in good faith.

139. Tug Hill knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

140. Tug Hill knowingly, willfully, and/or in reckless disregard carried out this illegal day rate pay scheme that systematically deprived Luna and the other Day Rate Workers of overtime wages for their hours worked over 40 in a workweek in violation of the FLSA.

141. Indeed, Tug Hill has been sued by employees before for failing to pay overtime wages in violation of the FLSA, including for the same illegal day rate pay scheme that is the subject of this collective action. *See, e.g.*, *Rogers v. Tug Hill Operating, LLC*, No. 5:21-CV-00199-JPB (N.D.W. Va.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

142. Luna incorporates all other paragraphs by reference.

143. Luna brings his FLSA claims as a collective action on behalf of himself and the other Day Rate Workers.

144. Tug Hill violated, and is violating, the FLSA by employing non-exempt employees (Luna and the other Day Rate Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

145. Tug Hill's unlawful conduct harmed Luna and the other Day Rate Workers by depriving them of the overtime wages they are owed.

146. Accordingly, Tug Hill owes Luna and the other Day Rate Workers the difference between the rate actually paid and the proper overtime rate.

147. Because Tug Hill knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, Tug Hill owes Luna and the other Day Rate Workers these wages for at least the past 3 years.

148. Tug Hill is also liable to Luna and the other Day Rate Workers for an amount equal to all their unpaid overtime wages as liquidated damages.

149. Finally, Luna and the other Day Rate Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

150. Luna demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Luna, individually and on behalf of the other Day Rate Workers, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

      b.      An Order finding Tug Hill liable to Luna and the other Day Rate Workers for unpaid overtime wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

      c.      A Judgment against Tug Hill awarding Luna and the other Day Rate Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

      d.      An Order awarding attorney's fees, costs, and expenses;

      e.      Pre- and post-judgment interest at the highest applicable rates; and

      f.      Such other and further relief as may be necessary and appropriate.

[THIS SPACE LEFT INTENTIONALLY BLANK.]

Dated: December 19, 2023.

Respectfully submitted,

**POWELL & MAJESTRO PLLC**

By:     /s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB 5165)
405 Capitol Street, Suite 803
Charleston, West Virginia 25301
Phone: (304) 346-2889
Fax:     (304) 346-2895
amajestro@powellmajestro.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR LUNA &
THE DAY RATE WORKERS**