**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**RANDY LUNA**, Individually
and for Others Similarly Situated,

Plaintiff,

v. **Civil Action No. 5:23-CV-361**
Judge Bailey

**TUG HILL OPERATING, LLC,**

Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before this Court is a Motion to Transfer or, in the Alternative, to Compel Arbitration and Dismiss Plaintiff's Complaint [Doc. 12] and accompanying Memorandum in Support [Doc. 13], filed February 20, 2024. A Response [Doc. 14] was filed on March 5, 2024. A Reply [Doc. 17] was filed on March 19, 2024.

For the reasons contained herein, the Motion will be denied.

## BACKGROUND

Plaintiff Randy Luna ("plaintiff") filed his Complaint [Doc. 1] on December 19, 2023, seeking to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against defendant Tug Hill Operating, LLC ("defendant Tug Hill"). [Id. at ¶ 1]. Plaintiff brings this action on behalf of himself and all other similarly situated

Safety Coordinators who worked for, or on behalf of, defendant Tug Hill who were allegedly paid under its day rate pay scheme. [Id. at ¶ 17].[1]

According to plaintiff, defendant Tug Hill operates an oil and natural gas exploration and production "focused on drilling and producing oil and clean-burning natural gas in the continental United States." [Id. at 34]. Plaintiff contends that while working for defendant Tug Hill, he, along with similarly situated workers, was paid his set day rates for his actual days worked with no overtime for hours worked in excess of 40 hours in a workweek in violation of the FLSA. [Id. at 13–14].

Plaintiff worked for non-party GryphonESP, LLC ("Gryphon).[2] Gryphon, in turn, engaged plaintiff to perform services on projects for the benefit of defendant Tug Hill. Underlying the foregoing relationship between The Texan LLC[3] and Gryphon is an Independent Contractor Agreement ("the Agreement"). *See* [Doc. 13-1]. Neither defendant Tug Hill nor plaintiff are parties to the Agreement:

---

[1] More specifically, plaintiff defines the putative collective of similarly situated employees as:

> All Safety Coordinators who worked for, or on behalf of, Tug Hill who were paid day rate with no overtime at any time during the past 3 years ("Day Rate Workers").

[Doc. 1 at ¶ 19]. "Safety Coordinators" are also referred to as "EHS Coordinators," "Safety Consultants," "Safety Coaches," and "EHS Coaches." *See* [id. at fn.1].

[2] Defendant Tug Hill contracts with companies such as Gryphon when it needs workers to perform specialized services.

[3] Plaintiff signed the Agreement on behalf of a disclosed principal: The Texas LLC. *See* [Doc. 13-1 at ¶ 7 ("A true and correct copy of the Independent Contractor Agreement that Mr. Luna signed on behalf of a limited liability company that he created, the Texan LLC, and that I signed on behalf of Gryphon is attached here as Exhibit 1.")].


This Independent Contractor Agreement (the "Agreement") is entered into this 30 day of June, 2022, by and between GryphonESP, LLC (the "Company") and The Texan LLC ("Contractor").

The Agreement states that the "Company," which is Gryphon, "wishes to engage Contractor [which is The Texan LLC] to provide certain services as an independent contractor . . . including but not limited to: the opportunity for Contractor to work on projects for the Company and the mutual agreement to arbitrate any and all claims each party may have against the other, the adequacy and sufficiency of which are acknowledged [in the Agreement.]" *See* [Doc. 13-1 at 1]. Throughout the Agreement, Gryphon confers several benefits on The Texan LLC, including:

- "Contractor acknowledges that it will receive an IRS Form 1099-MISC from the Company, and that Contractor shall be solely responsible for all federal, state, and local taxes." [Doc. 13-1 at ¶ 1(g)];
- "**CONTRACTOR AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY, COMPANY'S CLIENTS, AND ITS AND THEIR EMPLOYEES, AGENTS, MANAGERS, OFFICERS, DIRECTORS, INSURERS AND ATTORNEYS FROM AND AGAINST ANY AND ALL CLAIMS OF CO-EMPLOYMENT, JOINT EMPLOYMENT, VIOLATION OF STATE OR FEDERAL LABOR LAWS, VIOLATIONS OF TAX WITHHOLDING REQUIREMENTS, OR ANY OTHER WAGE OR LABOR RELATED CLAIM, INCLUDING CLAIMS UNDER THE FAIR LABOR STANDARDS ACT, BROUGHT OR ALLEGED BY CONTRACTOR,**

**CONTRACTOR'S SUBCONTRACTORS, OR ITS OR THEIR EMPLOYEES, AGENTS, MANAGERS, OFFICERS, DIRECTORS OR ANYONE CLAIMING BY, THROUGH OR UNDER THEM.**" [Id.];

- "Contractor and the Company agree that any and all Covered Claims[4] as defined in Section 12(a) will be decided by a single arbitrator through the American Arbitration Association in Harris County, Texas through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided herein. This is an agreement to arbitrate Covered Claims which shall be governed by the Federal Arbitration Act (9 U.S.C. 1-16) and to the extent not inconsistent with the Federal Arbitration Act, the Texas Arbitration Act (Tex. Civ. Pract. & Rem. Code 171, et seq.)" [Id. at ¶ 13];
- "**Waiver of Class, Collective and Representative Actions ("Class Action Waiver").** Contractor and the Company shall bring all Covered Claims in arbitration on an individual basis only; the Company and Contractor agree not to arbitrate Covered Claims in the form of a class, collective or representative action. Further, Contractor agrees that, in the presentation and resolution of any dispute between Contractor and Company included in Covered Claims, as well as against Company's other contractors, customers, clients, owners, members, directors or officers, Contractor expressly waives the right to participate in any class or collective

[4] "Covered Claims" are defined as "any and all legal claims, disputes or controversies that the Company may have, now or in the future, against Contractor or that Contractor may have against the Company, its parents, subsidiaries, successors or affiliates or clients or one of its employees or agents, arising out of or related to this Agreement, Contractor's Agreement or work with the Company or the termination of Contractor's Agreement with the Company." [Id. at ¶ 13(a)].

action and, rather, expressly agrees that Contractor will resolve any dispute or claim in a single action between only Contractor, on the one hand, and Company and Company's other contractors, customers, clients, owners, members, directors or officers, as the case may be, on the other hand. Accordingly, Contractor shall neither serve as a class or collective action representative nor shall Contractor join, seek or agree to join, actively or passively, or participate in any capacity in any class or collective action, no matter how small or minor, of a claimants' or plaintiffs' group, against Company or Company's other employees, contractors, owners, members, directors, or officers. Notwithstanding any other provision of this Agreement or the AAA Rules, disputes regarding the validity, enforceability or breach of this Class Action Waiver will be resolved only by a civil court of competent jurisdiction in Harris County, Texas and not by an arbitrator." [Id. at ¶ 13(d)]; and

- "This Agreement and all questions relating to its validity, interpretation, performance and enforcement (including, without limitation, provisions concerning limitations of actions), for all purposes, shall be governed by and construed in accordance with the laws of the State of Texas without regard to conflicts-of- law doctrines of such state or other jurisdictions to the contrary, and without the aid of any canon, custom or rule of law requiring construction against the draftsman." [Id. at ¶ 16].

## LEGAL STANDARDS

### I. Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to

which all parties have consented." Courts consider several factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *See* ***Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.***, 791 F.3d 436, 444 (4th Cir. 2015); *see also* ***P.M. Enterprises v. Color Works, Inc.***, 946 F. Supp. 435, 440 (S.D. W.Va. 1996) (Haden, C.J.) (listing several case-specific factors courts must weigh when resolving motions to transfer venue including the availability of compulsory process, the possibility of a view and the interest in having local controversies decided at home). Such factors are applied in the absence of a forum-selection clause.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." ***Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas***, 571 U.S. 49, 63 (2013) (internal quotation marks omitted). Under this scenario, "the plaintiff's choice of forum merits no weight. Rather, as a party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." ***Id***. In addition, courts may only consider whether public-interest factors, not private-interest factors, weigh in favor of the preselected forum. ***Id***. at 64. Overall, forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." ***M/S Bremen v. Zapata Off-Shore Co.***, 407 U.S. 1, 10 (1972).

## II. Motion to Dismiss

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also* ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the ***Twombly*** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro,*** 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." ***Twombly***, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." ***Williams v. Branker***, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into

one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. ***Id.*** at 396–97.

### III. 12(b) and Arbitration

A motion to compel arbitration may be pursued pursuant to Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure. In either instance, courts should apply the dismissal (rather than summary judgment standard) if the challenge is a facial attack to the allegations of the complaint. ***Price v. West Virginia Air National Guard, 130TH Airlift Wing***, 2016 WL 3094010, at *2 (S.D. W.Va. June 1, 2016) (Johnston, J.) (stating that a motion to dismiss under Rule 12(b)(1) can be either facial or factual, with the former challenging whether the allegations of the complaint are facially sufficient to sustain the court's jurisdiction).

Where the challenge is facial, the court must accept the allegations as true and proceed to consider the motion as it would a motion to dismiss for failure to state a claim under Rule 12(b)(6). ***Id.*** A challenge can be facial and thus subject to the motion to dismiss standard even if the defendants attach the arbitration agreement to their filing. *See* ***Salmons v. CMH of Ky., Inc.***, 2019 WL 3884038 (S.D. W.Va. Aug. 16, 2019) (Copenhaver, J.).

## DISCUSSION

As explained by the United States Court of Appeals for the Fourth Circuit:

> As a foundational principle, the Federal Arbitration Act ("FAA") provides for the enforcement of agreements to arbitrate when they are

created by contract, and such contracts must be treated like any other contract under applicable state law. Thus, as relevant to the issue presented in this case, the Supreme Court has held that "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" "those who are not parties to a written arbitration agreement" may be eligible for relief under the FAA. ***Arthur Andersen LLP v. Carlisle***, 556 U.S. 624, 629, 631 (2009) (quoting 21 Richard A. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001)). What ***Arthur Andersen*** also makes clear, however, is that it is *a court*, not an arbitrator, that must initially decide whether a nonparty to an arbitration agreement is entitled to enforce it. See ***id***. at 630–32. This emanates from the requirements of the FAA.

The FAA grounds arbitration obligations in contract law, as § 2 provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract ....

9 U.S.C. § 2. And consistent with that proposition, § 4 provides that a party "aggrieved" by the failure "of another to arbitrate *under a written agreement*

for arbitration may petition" *a federal court* "for an order directing that such arbitration proceed in the manner provided for in such agreement." Id. § 4 (emphasis added). That section adds that the court "shall" order arbitration "upon being satisfied that *the making of the agreement* for arbitration or *the failure to comply therewith* is not in issue." Id. (emphasis added); see also id. § 3 (directing a court to stay a civil action if the claim is "referable to arbitration *under an agreement in writing* for such arbitration" (emphasis added)).

The Supreme Court has recognized explicitly and repeatedly that arbitration obligations are grounded in contract law, including by emphasizing recently that under the FAA, "arbitration agreements [are] as enforceable as other contracts, but not more so." ***Morgan v. Sundance, Inc.***, —— U.S. ——, 142 S. Ct. 1708, 1713 (2022) (cleaned up); *see **id**.* (explaining that the Court's prior recognition of a federal "policy favoring arbitration" was "merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and that "the federal policy is about treating arbitration contracts like all others, not about fostering arbitration" (cleaned up)). Moreover, it is well established that when a challenge to the existence of a contractual obligation is properly raised, "*the court* determines whether a valid arbitration agreement exists" "*before* referring a dispute to an arbitrator." ***Henry Schein, Inc. v. Archer & White Sales, Inc.,*** —— U.S. ——, 139 S. Ct. 524, 530 (2019) (emphasis added);

*see also* ***Rent-A-Center, West, Inc. v. Jackson***, 561 U.S. 63 (2010) ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, *the federal court* must consider the challenge before ordering compliance with that agreement under § 4" (emphasis added)).

Thus, as a general matter, the relevant threshold question that a court must address when being asked to compel arbitration is whether "an arbitration agreement exists *between the parties*." ***Hightower v. GMRI, Inc.***, 272 F.3d 239, 242 (4th Cir. 2001) (emphasis added). But, as noted, there are circumstances in which a nonparty to a contract may nonetheless be entitled to enforce it under standard contract principles, such as "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." ***Arthur Andersen***, 556 U.S. at 631 (cleaned up). Therefore, when an objection is properly raised that the party seeking to enforce an arbitration agreement is not itself a party to that agreement, *the district court* must determine — as a condition precedent to the entry of any § 3 stay or § 4 order compelling arbitration — whether that party is entitled to enforce the arbitration agreement under state contract law. Otherwise, a party with no contractual right to compel arbitration might be permitted to do just that. And nothing in the FAA, or the Supreme Court's jurisprudence interpreting it, allows such a counterintuitive result — a result that would undermine the contractual foundation of the order compelling arbitration.

This principle finds direct support in the Supreme Court's decision in ***Arthur Andersen***. In that case, after an accounting firm and others were sued by a group of former clients, those defendants "moved to stay the action, invoking § 3 of the FAA and arguing that the principles of equitable estoppel demanded that [the plaintiffs] arbitrate their claims" based on an arbitration agreement the plaintiffs had entered into with another defendant. ***Arthur Andersen***, 556 U.S. at 626–27. While the Sixth Circuit had determined "that those who are not parties to a written arbitration agreement are *categorically* ineligible for relief" under the FAA, the Supreme Court concluded that that holding was incorrect. ***Id***. at 629, 631 (emphasis added). It reasoned that while § 2 "creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts," neither it nor § 3 "purports to alter background principles of state contract law regarding the scope of agreements" — including the questions of "who is bound by them" and who can enforce them. ***Id***. at 630 (cleaned up). Thus, "a litigant who was not a party to the relevant arbitration agreement may invoke § 3" to obtain a stay from the district court "*if the relevant state contract law allows him to enforce the agreement*." ***Id***. at 632 (emphasis added). The Court explained that this was so because "[i]f a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract

law, *[§ 3's] terms are fulfilled*," such that the court would then be "require[d]" to grant a § 3 stay to the third party. ***Id.*** at 631–32 (emphasis added).

***Arthur Andersen*** thus stands for the principle that if state contract law allows a person who was not a party to an arbitration agreement to nonetheless enforce it, then that nonparty is entitled to invoke the FAA's enforcement mechanisms in federal court. *See* 556 U.S. at 631–32; *see also* ***GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC***, —— U.S. ——, 140 S. Ct. 1637, 1644 (2020). And the necessary corollary to this principle is that when a nonparty to an arbitration agreement seeks to enforce it with a stay under § 3 or an order to compel arbitration under § 4, it is *the court* that must first determine that "the relevant state contract law allows [that nonparty] to enforce the agreement" so as to assure itself that the FAA's "terms are fulfilled." ***Arthur Andersen***, 556 U.S. at 631–32; *see also* ***GE Energy Power***, 140 S. Ct. at 1643 (recognizing that "Chapter 1 of the [FAA] permits *courts* to apply state-law doctrines related to the enforcement of arbitration *288 agreements," including "doctrines that authorize the enforcement of a contract by a nonsignatory" (emphasis added)).

***Rogers v. Tug Hill Operating, LLC***, 76 F.4th 279, 285–88 (4th Cir. 2023), *cert denied*, No. 23-661, 2024 WL 674823 (2024).

In this case, defendant Tug Hill contends that under the terms of the Agreement, "[t]here can be no dispute that the requirement to arbitrate in Texas is mandatory." *See*

[Doc. 13 at 9]. Defendant Tug Hill notes that under the language of the Agreement, "any and all Covered Claims . . . will be decided by a single arbitrator through the American Arbitration Association in Harris County, Texas through final and binding arbitration. . . ." [Id.; Doc. 13-1 at ¶ 13(d)]. And, with respect to class actions, "disputes regarding the validity, enforceability or breach of this Class Action Waiver will be resoled only by a civil court of competent jurisdiction in Harris County, Texas, and not by an arbitrator." [Id.; Doc. 13-1 at ¶ 13(d)].

Moreover, in the Reply, defendant Tug Hill argues that plaintiff's reliance on ***Rogers*** is misplaced. Defendant Tug Hill asserts that it was "expressly made a third-party beneficiary of the arbitration agreement" because the Agreement stands in "stark contrast" to the agreement at issue in ***Rogers*** due to this Agreement "expressly [referencing] to Gryphon's 'client' multiple times." [Doc. 17 at 9, 10].

First and foremost, plaintiff did not enter into any agreement that allows an arbitrator to decide whether a third party like defendant Tug Hill has rights under the arbitration agreement. Plaintiff merely signed the Agreement on behalf of The Texan LLC, a limited liability company. The Agreement is between The Texan LLC and Gryphon. Reading these clauses in the context of the Agreement as a whole, it is plain that The Texan LLC agreed to arbitrate issues arising between The Texan LLC and Gryphon.

Of course, the fact that defendant Tug Hill was not itself a party to the arbitration agreement does not categorically mean that Tug Hill is ineligible to obtain relief from the district court under the FAA. *See* ***Arthur Andersen***, 556 U.S. at 629–32. But it does mean that, as a precondition to granting defendant Tug Hill the right to enforce any portion

of an arbitration clause to which it was not a party, the district court is required, when that right is challenged, to determine whether "the relevant state contract law allow[ed] [defendant Tug Hill] to enforce [that] agreement," so as to ensure that the FAA's terms "are fulfilled." ***Id.*** at 631–32; *cf.* ***New Prime Inc. v. Oliveira***, —— U.S. ——, 139 S. Ct. 532, 536–38 (2019) (holding that even "[w]hen a contract delegates questions of arbitrability to an arbitrator," "a court should decide for itself whether [the FAA's] 'contracts of employment' exclusion applies before ordering arbitration" because "to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first" resolve that "necessarily antecedent statutory inquiry").

Thus, this Court must first resolve whether, as a matter of state contract law, defendant Tug Hill was authorized to enforce the Agreement between The Texan LLC and Gryphon. *Accord* ***Newman v. Plains All Am. Pipeline, L.P.***, 23 F.4th 393, 398–99 (5th Cir. 2022) (holding that it is for the court, not an arbitrator, to decide whether a litigant can enforce an arbitration agreement between two other parties); *see also* ***CCC Intelligent Solutions Inc. v. Tractable Inc.,*** 36 F.4th 721, 723–24 (7th Cir. 2022) (affirming the district court's application of "the rule that a judge must decide whether the parties have agreed to arbitrate" and concluding that an exception to the "dominant rule" that generally "C [cannot] claim rights under a contract that has only A and B as parties" was not applicable). *But see, e.g.*, ***Becker v. Delek US Energy, Inc.***, 39 F.4th 351, 355–56 (6th Cir. 2022) (holding that the question of whether a third party could enforce a delegation provision in an arbitration clause was for the arbitrator, not the court).

Defendant Tug Hill claims it can assert Gryphon's forum selection rights, including arbitration, as a third-party beneficiary under Texas law, because courts "have found that the very language used in [the Agreement] at issue here was sufficient to confer third-party beneficiary status." *See* [Doc. 13 at 16–19; Doc. 17 at 11].

"Texas cases have consistently [held] that a person who signs a contract on behalf of a disclosed principal is not a party to the contract and is generally not liable under it." ***Plan B Holdings, LLC v. RSLLP***, 681 S.W.3d 443, 455 (Tex. App. 2023); *See, e.g.*, ***Roe v. Ladymon***, 318 S.W.3d 502, 521 (Tex. App.—Dallas 2010, no pet.) ("[B]y signing the contract as an agent for a disclosed principal, Ladymon did not become personally bound by the terms of that contract ...."); ***Nadeau Painting Specialist, Ltd. v. Dalcor Prop. Mgmt., Inc.***, 2008 WL 2777724, at *6 (Tex. App.—Austin July 18, 2008, no pet.) (mem. op.) ("Unless the parties have agreed otherwise, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." (quoting ***A to Z Rental Ctr. v. Burris***, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.))); *see also* ***Mission Grove, L.P. v. Hall***, 503 S.W.3d 546, 551–52 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract....").

Under Texas law, "the fact that [The Texan LLC] entered into the contract with [Gryphon], thereby agreeing to the arbitration clause, did not cause [The Texan LLC's] agent [ plaintiff], to be personally bound by that agreement, even though [plaintiff] executed the contract on behalf of [The Texan LLC]." ***Covington v. Aban Offshore Ltd.***, 650 F.3d 556, 559 (5th Cir. 2011). There is a "presumption that the parties contracted solely for

themselves, and only a clear expression of the intent to create a third-party beneficiary can overcome the presumption." ***First Bank v. Brumitt***, 519 S.W.3d 95, 103, (Tex. 2017) (cleaned up).

Thus, the fact that The Texan LLC entered into the contract with Gryphon, thereby agreeing to the arbitration clause and class waiver provision, did not cause The Texan LLC's agent, plaintiff, to be personally bound by that agreement, even though plaintiff executed the contract on behalf of The Texan LLC." *See* **Covington,**, 650 F.3d at 559; ***Rogers***, 76 F.4th at 290.

"[T]exas law provides that 'a person seeking to establish third-party-beneficiary status must demonstrate' not only 'that the contracting parties intended to secure a benefit to that third party' but also they 'entered into the contract *directly for the third party's benefit*.'" ***Rogers***, 76 F.4th at 289 (quoting ***First Bank***, 519 S.W.3d at 102).

In this case, the Agreement between The Texan LLC and Gryphon contains "no provision stating specifically that it was entered into *for the sole benefit* of Tug Hill or *directly* for its benefit." *See* ***Rogers***, 76 F.4th at 289 (quoting ***First Bank***, 519 S.W.3d at 102). Even though there is a five-page document detailing the services the independent contractor shall provide to defendant Tug Hill through Gryphon's consulting services and even though the Agreement mentions Gryphon's "clients", this is not a clear expression of the intent to include defendant Tug Hill as a third-party beneficiary.

Moreover, under the arbitration and/or class waiver provisions of the Agreement, there is not specific language that The Texan LLC and Gryphon intended to also include defendant Tug Hill in those provisions. The Agreement makes clear that the provisions

were made and agreed upon between The Texan LLC and Gryphon—not The Texan LLC, Gryphon **and** defendant Tug Hill. *See* [Doc. 13-1 at ¶ 13 ("Contractor and the Company agree. . ."); Doc. 13-1 at ¶ 13(d) ("Contractor and the Company shall bring. . .")]. These provisions in the Agreement "preclude any conclusion that the Agreement was entered into solely or directly for the benefit of Tug Hill, such that Tug Hill could enforce it as a third-party beneficiary." ***Rogers***, 76 F.4th at 290. After all, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ***AT & T Techs., Inc. v. Communications Workers of Am.***, 475 U.S. 643, 648 (1986).

Thus, this Court finds that defendant Tug Hill is not a third-party beneficiary of the Agreement between The Texan LLC and Gryphon and cannot use that Agreement to arbitrate or to change venue.

**CONCLUSION**

For the foregoing reasons, the Motion to Transfer or, in the Alternative, to Compel Arbitration and Dismiss Plaintiff's Complaint [**Doc. 12**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: March 20, 2024.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE